[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-15507
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cv-02284-CAP

KENNETH COONS,

Plaintiff-Appellant,

versus

GWINNETT COUNTY,
WARDEN DAVID PEEK,
individually, as well as in His Official Capacity
as a Gwinnett County Employee,

Defendants-Appellees,

JOHN DOES 1-3,

Defendant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(July 27, 2016)

Before TJOFLAT, ROSENBAUM, and JILL PRYOR, Circuit Judges.

PER CURIAM:

In this case, Plaintiff-Appellant Kenneth Coons claims that he was unlawfully detained by Defendants-Appellees Gwinnett County and Warden David Peek for nearly ten months after he was supposed to be released, violating his constitutional rights and state law. The district court granted summary judgment to the defendants on all claims. Coons appeals, arguing that the County is liable for maintaining a policy or custom that caused his unlawful detention, and that Peek is individually liable because he was not entitled to either qualified immunity under federal law or official immunity under state law. After careful review, we affirm the judgment in favor of the defendants.

## I. Background

On June 11, 2004, Coons pled guilty to theft by taking in Georgia state court. He was sentenced to a total term of ten years of probation, with the "first 5 years to be served on work release until restitution is paid" and the remainder of the sentence to be served on probation. If Coons paid restitution before five years passed, he would be relieved of his work-release obligation at that time. Otherwise he would have to stay in work release for the full five years.

The work-release program is basically part-time incarceration. The program allows inmates to maintain regular employment outside of custody while serving

2

their non-working time in custody.  Failure to abide by the terms and conditions of the program, including failure to return to custody at the designated time, may result in termination from the program and transfer to full-time incarceration. Georgia law also makes it a felony for a person, having been convicted of a felony, to fail to return to custody after having been released on the condition that he or she will return.  *See* O.C.G.A. § 16-10-52(a)(5), (b)(1).

On April 14, 2005, Gwinnett County Superior Court Judge Ronnie Batchelor issued an order releasing Coons from work release for two days so that he could attend his grandmother's funeral.  Coons failed to return by the deadline set in Judge Batchelor's order, however, leading the state to charge Coons with escape, O.C.G.A. § 16-10-52.  Judge Batchelor issued a warrant for Coons's arrest on April 25, 2005, but Coons was not arrested until February 2012, nearly seven years later.

In April 2012 the state petitioned to revoke Coons's probation based on his escape.  At a probation-revocation hearing, Judge Batchelor partially revoked Coons's probation and ordered him to serve ten months in custody, with credit for time served since his arrest and "2 for 1 credit."  With these credits, Coons's ten-month revocation sentence was set to expire on July 14, 2012.  Judge Batchelor further ordered, "Upon his release, [Coons] is to comply with all the remaining conditions of his probated sentence, including the restitution."  In Coons's view,

Judge Batchelor intended that he be released on July 14, 2012, to serve the remainder of his sentence on regular probation.

However, on July 13, 2012, one day before the end of his revocation sentence, Coons was transferred back to the custody of the work-release program and served with a disciplinary report charging him with escape. That same day, the escape charge was investigated, and, after a disciplinary hearing, a disciplinary hearing officer found Coons guilty of escape and recommended that he be removed from the work-release program—and incarcerated full-time—for the remainder of his sentence. Per Gwinnett County Department of Corrections ("DOC") policies, the recommendation of the disciplinary hearing officer was submitted to Defendant Peek, Warden of the DOC at the time, who was authorized to approve, disapprove, or modify the disciplinary hearing officer's findings and recommendations. On July 16, 2012, Peek approved the recommendation to remove Coons from the work release program and to incarcerate him full-time.

Coons remained incarcerated from July 13, 2012, until his release on May 17, 2013. During that time, Coons wrote Peek on numerous occasions explaining that he was supposed to be released on July 14, 2012, to continue with probation. Coons also filed two *pro se* motions to modify his sentence, in November and December 2012, respectively, which Judge Batchelor denied. Coons eventually obtained legal counsel, who filed a motion to modify the terms of the probation

4

revocation sentence on May 10, 2013.  On May 17, 2013, Judge Batchelor granted the motion and ordered Coons released from custody.  Coons served the remainder of his ten-year sentence, which ended in June 2014, on probation.

In July 2014, Coons filed this lawsuit against Peek and Gwinnett County. Invoking 42 U.S.C. §§ 1983, 1985, and 1986, and Georgia state law, Coons alleged that the defendants violated his rights to due process, to be free from forced servitude, and to be free from cruel and unusual punishment.  The defendants removed the complaint to the United States District Court for the Northern District of Georgia and later moved for summary judgment.  Peek asserted that he was shielded from the individual-capacity federal claims by the doctrine of qualified immunity and from the individual-capacity state claims by the Georgia doctrine of official immunity.  The district court granted summary judgment to the defendants on all claims.  Coons now brings this appeal, challenging the disposition of his § 1983 claims against Gwinnett County and his § 1983 and state claims against Peek in his individual capacity.[1]

---

[1] Coons has abandoned his other claims, including claims under §§ 1985 and 1986, state claims against Gwinnett County, claims against Peek in his official capacity, and any claims against unnamed John Does, by failing to raise them in his appellate brief.  *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680–82 (11th Cir. 2014).

## II.  Standard of Review

We review *de novo* a district court's grant of summary judgment, applying the same legal standards that governed the district court.  *Bradley v. Franklin Collection Serv., Inc.*, 739 F.3d 606, 608 (11th Cir. 2014).  We consider the record and draw all reasonable inferences in the light most favorable to Coons, the non-moving party.  *See id*.  Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  We may affirm the district court's grant of summary judgment on any adequate ground supported by the record, even if it is not one on which the district court relied.  *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013).

## III.  Discussion

Coons's essential contention is that he was unlawfully detained for a longer period than authorized by the "plain wording of multiple judicial orders."  More precisely, he asserts that he was entitled to be released the date his revocation sentence ended on July 14, 2012, ten months before his actual release in May 2013.  According to Coons, the work-release portion of his sentence expired after five years (in 2009), because he was sentenced to serve only the "first" five years on work release, and those years had passed because his sentence had not tolled

6

despite his escape.[2]   As a result, Coons claims, work release was not one of the "remaining conditions of his probated sentence" with which he needed to comply "upon release" from his revocation sentence.

Given the differing standards applicable to Coons's federal and state claims, we separate our discussion into two parts.   First, we conclude that summary judgment was appropriate on Coons's federal claims:   Gwinnett County did not have a policy or custom that could subject it to § 1983 liability; and Peek is entitled to qualified immunity.   Second, we hold that Peek is entitled to official immunity under Georgia law because his actions were discretionary in nature and there is no evidence he acted with actual malice.

### A.      42 U.S.C. § 1983 Claims against Gwinnett County

Coons contends that Gwinnett County is liable for his allegedly unlawful detention because it had a policy or custom of holding inmates longer than judicially authorized.   To hold a local government liable under § 1983, the plaintiff must identify a "policy" or "custom" that caused the alleged constitutional violations.   *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004).   For a plaintiff to demonstrate such a policy or custom, "it is generally necessary to show a persistent and wide-spread practice."   *Id.*   "Proof of a single incident of

---

[2] The defendants agree that Coons's sentence did not toll for the seven-year period he was outside of custody after his escape.  Had Coons's sentence tolled, the period he was outside of custody would not have counted towards satisfying his ten-year sentence.  While the relevant statute authorizes tolling of a probated sentence in the event of escape, the steps necessary to toll a sentence were not taken in this case.  *See* O.C.G.A. § 42-8-36.

7

unconstitutional activity is not sufficient to impose liability against a municipality," "even when the incident involves several employees of the municipality." *Craig v. Floyd Cty., Ga.*, 643 F.3d 1306, 1310–11 (11th Cir. 2011) (internal quotation marks omitted).

Here, Coons has not shown that the alleged constitutional violations arose out of a policy or custom. For example, he has not produced evidence of another inmate in Gwinnett County detained beyond the date authorized by a court order. The only evidence on which Coons relies is his own experience. But this isolated incident is insufficient to impose liability on Gwinnett County. *See id.* at 1312 ("Craig relies on his own experience, which is, at most, proof of a single incident of unconstitutional activity . . . [that] is not sufficient to impose liability under § 1983." (alteration adopted; citation and internal quotation marks omitted)); *McDowell*, 392 F.3d at 1290–91. Consequently, the district court properly granted summary judgment to Gwinnett County.

### B.    42 U.S.C. § 1983 Claims against Peek

Peek invoked the defense of qualified immunity for the federal claims against him in his individual capacity, and the district court found that he was entitled to it. Qualified immunity protects government officials engaged in discretionary functions and sued in their individual capacities unless they violate "clearly established federal statutory or constitutional rights of which a reasonable

person would have known." *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2013) (brackets and internal quotation marks omitted).

To raise the defense of qualified immunity, the official must first show that he was acting within the scope of his discretionary authority. *Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir. 2013). We have "interpreted the term 'discretionary authority' to include all actions of a governmental official that (1) 'were undertaken pursuant to the performance of his duties,' and (2) were 'within the scope of his authority.'" *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994) (quoting *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988)).

Coons contends that Peek could not have been acting within the scope of his authority because Peek had no authority over Coons as of July 14, 2012, at the latest, the date Coons's revocation sentence ended and two days before Peek revoked his work-release status. However, "[t]he inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act. Framed that way, the inquiry is no more than an 'untenable' tautology." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998). Instead, we ask "whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties. The scope of immunity should be determined by the relation of the [injury] complained of to the duties entrusted to the officer." *Id.* (quotation marks omitted).

9

Here, Peek has met his burden of showing that he was acting with the scope of his discretionary authority.  As Warden of the DOC, Peek was authorized to approve, reject, or modify the recommendations of disciplinary hearing officers. Furthermore, he was authorized by statute to revoke work-release status "for any reason for which work release status would otherwise be revoked," O.C.G.A. § 17-10-1(g)(2), such as escape from custody.  Thus, Peek had the authority to revoke work release for escape and to transfer an inmate to full-time incarceration. Accordingly, Peek's actions were "carried out in the performance of his normal job duties and were within the authority delegated to him by his employer."  *See Rich*, 841 F.2d at 1564.

So the burden shifts to Coons to show that Peek is not entitled to qualified immunity.  *See Maddox*, 727 F.3d at 1120.  To meet that burden, Coons must demonstrate both that Peek violated a constitutional right and that the right was "clearly established . . . in light of the specific context of the case, not as a broad general proposition[,]" at the time of the alleged violation.  *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001).  We may decide these issues in either order, but the plaintiff must make both showings to survive a qualified-immunity defense.  *Maddox*, 727 F.3d at 1120–21.

With regard to the constitutional violations at issue, this Circuit recognizes that the Due Process Clause of the Fourteenth Amendment guarantees to

10

individuals the right to be free from excessive continued detention after a jail or prison ceases to have a legal right to detain the individual. *See Cannon v. Macon Cty.*, 1 F.3d 1558, 1562–63 (11th Cir. 1993); *Douthit v. Jones*, 619 F.2d 527, 532 (5th Cir. 1980).[3]   Coons also alleged that his continued detention violated the Eighth and Thirteenth Amendments, but he has identified no precedent recognizing these theories of alleged constitutional violations.

In any case, we conclude that, even if constitutional violations occurred, Coons has not shown that Peek violated clearly established law in the specific context of this case.[4]   "The touchstone of qualified immunity is notice[,]" or fair warning.  *Moore v. Pederson*, 806 F.3d 1036, 1046 (11th Cir. 2015).   A constitutional right is not clearly established, and an official is entitled to qualified immunity, unless "a reasonable official would understand that his conduct violates that right." *Id.*  "[T]his inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition. " *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (*en banc*) (internal quotation marks omitted).

Here, Coons has not shown that Peek violated clearly established law because a reasonable official would not have understood, in the specific context of this case, that continuing to detain Coons violated his constitutional rights.   In

---

[3] This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).
[4] Our analysis of these claims differs from that of the district court, though we do not mean to imply that the district court was incorrect. *See Feliciano*, 707 F.3d at 1252.

11

practical terms, Coons has made no showing that he was clearly entitled to be released on July 14, 2012.

As an initial matter, Coons has not identified any materially similar precedent on point that would have alerted Peek that his actions were unlawful. Instead, Coons relies on the wording of his original sentence and of Judge Batchelor's revocation order, which together, he asserts, clearly establish his right to be released to regular probation on July 14, 2012. We cannot agree, even with the benefit of hindsight.

The relevant judicial orders are ambiguous as to whether work release remained a condition of Coons's probated sentence following July 14, 2012. The judge who imposed Coons's original sentence appears to have placed a five-year limit on Coons's work release and may have intended for Coons to serve the "first" five years on work release, but the sentence also contemplates that Coons would "complete" five years or pay restitution, not simply pass the time in some way. The original sentence simply does not account for the possibility that Coons would escape but the sentence would not be tolled. Nor do Judge Batchelor's actions at the probation-revocation hearing clarify matters. Judge Batchelor ordered Coons to comply with "all remaining conditions of his probated sentence" upon his release from the revocation sentence, but work release was not discussed at the probation-revocation hearing, so there is little to indicate whether Judge Batchelor

thought that work release was such a remaining condition or intended Coons to return to work release.[5]

Faced with judicial orders that provide little guidance, and with no precedent on point, a reasonable official would not have known that Coons was not subject to work release and that revoking his work-release status based on his prior escape was unlawful. *See Moore*, 806 F.3d at 1046. When Coons was transferred back to the work release program in July 2012, he had not complied with the conditions of his original sentence:  He had not completed five years in the work-release program or paid restitution in full.  Instead, he spent ten months in the work-release program before escaping for the next seven years.  In light of these facts, it would have been reasonable for an official in Peek's place to conclude that work release was a "remaining condition" of his probated sentence with which Coons needed to comply.  And if Coons was subject to work release, revocation of his work-release status was warranted for his having escaped over seven years earlier. *See* O.C.G.A. § 17-10-1(g)(2).

Although Coons, after his work-status had been revoked, protested to Peek that he was entitled to be released earlier, Coons's protests were based on an interpretation of the same orders we have analyzed above and found ambiguous

---

[5] Judge Batchelor has submitted an affidavit for this case stating that it was not his intention to relieve Coons from his work-release obligations. The fact that Judge Batchelor denied Coons's *pro se* motions in November and December 2012 supports that statement, though the judge's later grant of Coons's counseled motion does not.

13

with respect to Coons's work-release obligation.[6]  Thus, Coons's protests do not call into question the reasonableness of Peek's actions.

In short, Peek is entitled to qualified immunity because a reasonable official could "have believed his or her conduct to be lawful in light of clearly established law and the information possessed by the official at the time the conduct occurred." *See Hardin v. Hayes*, 957 F.2d 845, 848 (11th Cir. 1992).  Coons has not identified any precedent or evidence that would have put Peek on notice that what he was doing violated Coons's constitutional rights.  *See Moore*, 806 F.3d at 1046.  Therefore, the district court properly granted summary judgment on the § 1983 claims against Peek in his individual capacity.

### C.    State Law Claims

Finally, Coons argues that the district court erred in granting official immunity to Peek on the state-law claims against him.  Under the doctrine of official immunity, state officers and employees are "immune from individual liability for discretionary acts undertaken in the course of their duties and performed without willfulness, malice, or corruption." *Reed v. DeKalb Cty.*, 589 S.E.2d 584, 587 (Ga. Ct. App. 2003).  So, absent actual malice, county officials are entitled to official immunity for negligently performed discretionary acts within

---

[6] Nor would further investigation necessarily have clarified matters.  The defendants submitted evidence showing that a classification officer with the DOC attempted to obtain clarification from Judge Batchelor regarding the terms of his order on July 17, 2012, and that, after speaking with Judge Batchelor's secretary, who spoke with the judge, the classification officer determined that Coons was still subject to work release.

the scope of their authority, but they may be held personally liable for negligently performed ministerial acts. *Roper v. Greenway*, 751 S.E.2d 351, 352 (Ga. 2013); *Parrish v. Akins*, 504 S.E.2d 276, 278–79 (Ga. Ct. App. 1998).

Under Georgia law, "[a] discretionary act . . . calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and *acting on them in a way not specifically directed*." *Roper*, 751 S.E.2d at 354 (quotation marks omitted; emphasis in original). A ministerial act, by contrast, is one done in the execution of a simple, specific duty. *Id.* at 353. "A ministerial duty may be established by evidence such as a written policy, an unwritten policy, a supervisor's specific directive, or a statute." *Id.* (citations omitted). Regardless of the source of the duty, however, the procedures or instructions establishing the duty must be "clear, definite, and certain." *Id.* "Without evidence of a policy establishing a specific duty," a defendant's actions cannot be considered to be in breach of a ministerial duty.

Coons argues that official immunity does not apply because releasing him pursuant to a court order was a ministerial duty. But Coons has not shown that Peek had a "clear, definite, and certain" duty to release him on the date Coons asserts. As was have explained more fully above with regard to qualified immunity, whether Coons was subject to work release upon the end of his revocation sentence was ambiguous, and the decision to revoke Coons's work-

15

release status was one committed to Peek's discretion and judgment. Thus, Coons has not shown that Peek breached a ministerial duty. *See id.* Nor does the record contain any evidence that Peek acted with actual malice or intent to injure. *See id.*

In sum, Peek is shielded from Coons's state-law claims by the doctrine of official immunity, and the district court properly granted summary judgment on these claims.

## IV. Conclusion

For the reasons stated, the judgment of the district court in favor of the defendants is **AFFIRMED**.